# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES E. PRATT, ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Case No. CIV-17-133-RAW-SPS |
| ) | |
| COMMISSIONER of the Social ) | |
| Security Administration, ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

The claimant James Pratt requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. He appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a

five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on August 6, 1962, and was fifty-three years old at the time of the administrative hearing (Tr. 56, 252). His education includes four or more years of college, but he has no past relevant work (Tr. 22, 210). The claimant alleges he has been unable to work since September 1, 2007, due to carpal tunnel syndrome in both hands and bulging discs (Tr. 209).

## Procedural History

On November 22, 2013, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ Deborah L. Rose held an administrative hearing and determined the claimant was not disabled in a written decision dated March 2, 2016[2] (Tr. 14-23). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant retained the residual functional capacity (RFC) to perform a reduced range of light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, he could lift/carry and push/pull

---

[2] The claimant had a previous application for benefits which were denied by an ALJ on October 25, 2013. Accordingly, ALJ Rose's opinion only considered the claimant's claim for disability for the period beginning October 26, 2013, and the claimant has not challenged this on appeal.

twenty pounds occasionally and ten pounds frequently, stand/walk six hours in an eight-hour workday, sit six hours in an eight-hour workday, and push/pull as much as he could lift/carry, but that he could only occasionally handle, finger, or operate hand controls with his dominant right upper extremity.  Furthermore, she found that he could understand, remember, and carry out simple tasks, and that he could make simple decisions (Tr. 18).  The ALJ concluded that although the claimant had no past relevant work to return to, he was nevertheless not disabled because there was work he could perform, *i. e.*, conveyor line bakery or furniture rental clerk (Tr. 22-23).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly assess his credibility, and (ii) failing to properly assess his RFC, including failing to give sufficient consideration to a consultative examiner's opinion in the record.  The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of carpal tunnel syndrome, degenerative disc disease, and pain disorder (Tr. 16).  The relevant medical evidence reveals that the claimant was diagnosed with severe carpal tunnel syndrome of his right wrist and underwent surgery on October 2, 2007 (Tr. 313-324).  By October 18, 2007, his doctor had released him to full activities at his tolerance, noting he was both neurovascularly and motor intact with a good grip (Tr. 324).  An April 2008 view of the claimant's lumbar spine revealed mild degenerative disc disease affecting the lower two levels, and probable left renal calculus (Tr. 332).  Dr. Beau Jennings examined him that same day, noting diminished grip strength of the right hand and limited lumbar range of

motion in flexion and extension, but that his gait was normal and straight leg raising tests were negative (Tr. 333-334). He assessed the claimant with chronic lumbar pain (Tr. 334).

On January 4, 2010, Dr. Denise LaGrand, Psy.D., conducted a psychological assessment of the claimant and administered various tests (Tr. 516). Dr. LaGrand noted that there were discrepancies between the claimant's past and current functioning, with no apparent explanation, noting he had a bachelor's degree but that his IQ was well below average; that he did not use his right hand in testing at all because he claimed he could not, but frequently used his right hand to scratch or rub his face, and that "[a]t times, he would realize what he was doing and quickly put his hand back in his lap"; and he laid his pencil down after each task even when asked not to, which significantly decreased his performance on timed tasks (Tr. 341-342). Noting the issues with validity, she stated that he tested in the range of borderline intellectual functioning, but that he did not provide a valid assessment and she believed he was "exaggerating his impairments physically, psychologically, and intellectually" (Tr. 343-344). She did caution that there was a possibility of some undiagnosed neurological impairment, but that was beyond the scope of her evaluation (Tr. 344). She diagnosed him with malingering (Tr. 344).

On March 6, 2014, Dr. Robert Cortner, D.O., examined the claimant, noting he had decreased grip strength in his right hand, difficulty manipulating small objects with his right hand, and the inability to effectively grip a tool such as a hammer in his right hand (Tr. 349). Dr. Cortner noted no cyanosis or digital clubbing, and no edema or varicosities (Tr. 349). He further noted that the claimant had a positive straight leg test in the supine position bilaterally, as well as increased pain and range of motion testing of the lumbosacral

spine, and tenderness to palpation in the lumbar paraspinal muscles with noted paraspinal muscle spasm (Tr. 350). Furthermore, Dr. Cortner found the claimant had decreased sensation in the right forearm and hand and sensory loss to the first three fingers on his right hand, but that cranial nerves were grossly intact and deep tendon reflexes were normal in all extremities bilaterally (Tr. 350). Dr. Cortner assessed the claimant with chronic low back pain with history of bulging discs, chronic right arm pain, decreased right grip strength, likely continued right carpal tunnel syndrome status post surgery, and muscle spasm to the lumbar paraspinal muscles (Tr. 350).

At the administrative hearing before ALJ Rose, the claimant testified that he cannot hold a pen to a make a short grocery list, grip a coffee cup handle, or sign his name with his right hand, because he has no grip in his right arm (Tr. 66-67). He testified that pain in his right hand is continuous and goes up to his elbow (Tr. 67). He further stated that he cannot use his right hand to do anything, that he washes his hair with his left hand, and is unable to carry grocery bags with his right hand or on his right arm (Tr. 68-69). He also testified as to his back pain, that he takes muscle relaxers when his back hurts, but that they do not eliminate the pain (Tr. 69-70). He stated he could stand five to ten minutes at a time and lift five or ten pounds with his left arm, but could only lift something light like a pen with his right hand (Tr. 70). However, he also stated that he could use his right arm to pull the microphone on the table at the hearing toward himself, and that he could push it forward as well (Tr. 71). When questioned about it, he asserted that he could do so, but that he could not do so repeatedly because his "arm would probably get to hurting" (Tr. 72). The

claimant was asked about driving, and he testified that he did not because he was afraid he would lose control of the car if his arm went to sleep (Tr. 75-76).

State reviewing physicians determined that the claimant could perform light work but that fingering and handling with the right was limited to occasional (Tr. 120-121, 137-138). Explanatory notes reflect the physicians considered that the medical evidence did not support the severity alleged with regard to the right hand, but that the light RFC with occasional handling and fingering was supported (Tr. 138).

In her written opinion, the ALJ summarized the claimant's hearing testimony, his wife's Third Party Function Report, and the medical evidence in the record. At step four, she noted Dr. LaGrand's prior mental evaluation of malingering significantly reduced his credibility (Tr. 20). Additionally, she noted the following factors that reduced his credibility: (i) there were no test results displaying nerve involvement or severe stenosis to support his complaints of pain, (ii) his Bachelor's degree and history of teaching school were not consistent with the mental limitations he alleged and the IQ testing was inconsistent with his level of education, and (iii) his sparse work record did not lend support to his statements that he could not work (Tr. 20). As relevant, ALJ Rose then summarized Dr. Cortner's consultative report, specifically noting, *inter alia*, the decreased range of motion in the right hand and difficulty manipulating objects (but no cyanosis, digital clubbing, or edema), as well as the positive straight leg raising test (Tr. 21). She then assigned some weight to Dr. Cortner's opinion, noting it was consistent with his physical examination and the evidence in the case (Tr. 21). The ALJ then assigned some weight, but not controlling weight, to the opinions of the state reviewing physicians (both physical

-7-

and mental), noting as to the physical assessments that there was evidence in the record that the claimant was malingering (Tr. 21).

The claimant first contends that the ALJ erred in analyzing his credibility, *inter alia*, as to the severity of his pain. *See, e. g., Thompson v. Sullivan*, 987 F.2d 1482, 1490-1491 (10th Cir. 1993) ("Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant."), *citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) *and Gossett v. Bowen*, 862 F.2d 802, 807-808 (10th Cir. 1988). At the time this case was decided, the ALJ was required to analyze credibility of the claimant's subjective complaints in accordance with Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996), and such analysis was entitled to deference by this Court absent some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). With respect to pain in particular, an ALJ could disregard any subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings were required to be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Here, the ALJ set out the applicable credibility factors and cited evidence supporting his conclusion that the claimant's subjective complaints were not believable to the extent alleged. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004) (credibility determination "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'"), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL

374186, at *4. Because he gave reasons for his credibility findings that were specifically linked to the evidence in the record, there is no indication that the ALJ misread the evidence as a whole and his credibility determination is entitled to deference. *See Casias*, 933 F.2d at 801. as discussed above. The ALJ therefore did not err in analyzing the claimant's credibility.[3]

The claimant also asserts that the ALJ erred in his RFC assessment, in particular with respect to his findings concerning Dr. Cortner's consultative examination. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's

---

[3] The Court notes that the Social Security Administration eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has provided new guidance for evaluating statements pertaining to intensity, persistence, and limiting effects of symptoms in disability claims. The Court finds that even under the new standard, the ALJ properly evaluated the claimant's credibility.

attention which tend to support or contradict the opinion.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).  An ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Id.* at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5.

The claimant's specific complaint is that the ALJ failed to analyze incorporate Dr. Cortner's report in accordance with aforementioned factors and incorporate her findings into the claimant's RFC.  The undersigned Magistrate Judge finds, however, that the ALJ's analysis of Dr. Cortner's consultative opinion was sufficiently clear for the Court to determine the weight given.  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions.  Nothing more was required in this case."), *citing* 20 C.F.R. § 404.1527(d)(2).  *See also Andersen v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.").  The claimant is essentially asking the Court to reweigh the evidence and determine his RFC differently from the Commissioner, which the Court cannot do.  *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 24th day of August, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**